IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:19-CR-305-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DEFENDANT BRYAN ALLEN'S |
| | ) | MEMORANDUM IN SUPPORT |
| v. | ) | OF MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| BRYAN CRAIG ALLEN, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Bryan Craig Allen, through counsel, respectfully submits this

memorandum in support of his Motion for Compassionate Release (DE 46).

## <u>MATTER BEFORE THE COURT</u>

Bryan Allen moves the Court to grant him compassionate release for

extraordinary and compelling reasons, based on the spread of COVID-19

throughout the Bureau of Prisons, Mr. Allen's individual characteristics, and his

family circumstances.  As shown below, the 18 U.S.C. § 3553(a) factors favor

compassionate release, and Mr. Allen poses no danger to any other person or the

community.  Therefore, Mr. Allen respectfully contends that compassionate

release is appropriate.

### *Sentence and incarceration*

On 23 July 2020, Mr. Allen was sentenced to a total term of imprisonment

of two years and one month, including a mandatory minimum sentence of two years on his conviction for aggravated identity theft, and a consecutive sentence of one month on his conviction for theft of government property. (DE 43 at 1-2). The Court also imposed a total term of three years' supervised release. (*Id.* at 3). The Court ordered Mr. Allen to self-report to the designated Bureau of Prisons institution by 20 November 2020. (DE 45). At Mr. Allen's request, and without objection by the Government, the Court also recommended that the Bureau of Prisons designate Mr. Allen to serve his sentence on home confinement. (*See* DE 43 at 2).

Mr. Allen now moves the Court to modify his prison sentence and impose a term of probation or supervised release equivalent to his unserved prison sentence of two years and one month, with a condition of home detention, to be followed by the three-year term of supervised release previously imposed.

### Release plan

If the Court grants Mr. Allen's motion for compassionate release, he will continue to reside with his wife and three minor children in Anacoco, Louisiana. *See* Declaration of Sarah Allen ¶¶ 3, 5 (DE 46-1) (redacted to remove home street address). Mr. Allen will be able to continue caring for his children while his wife, a schoolteacher, returns to work in the uncertain environment resulting from

COVID-19.  *See id.* ¶ 5.  Ms. Allen will provide financial support for her husband

as needed.  *Id.* ¶ 6.  She is also willing to supervise Mr. Allen's compliance with

any conditions the Court may impose.  *Id.* ¶ 7.  Finally, Mr. Allen recently

separated from his job with the United States Army.  *See* Declaration of Kelly

Margolis Dagger ¶ 4 (DE 46-2).  To the extent consistent with Mr. Allen's release

conditions, he can accept a job offer from a defense contracting company, or a job

offer at a local restaurant in Leesville, Louisiana.  *See* Letter from Bryan Allen

(DE 46-3); Letter from Robert Ciaccio (DE 46-4); Capability Statement, Darley

Defense Website (DE 46-5); Email from James Grant Blakeney (DE 46-6); Dagger

Decl. ¶¶ 6-9.  Mr. Allen will begin paying restitution with his earnings.  *See* Letter

from Bryan Allen (DE 46-3).

## LEGAL STANDARD

"Subject to few exceptions, a sentence that has been imposed may not be

modified."  *United States v. Norris*, No. 7:19-CR-36-BO-2, 2020 WL 2110640, at

\*1 (E.D.N.C. Apr. 30, 2020).  "One exception to this general rule applies where a

defendant qualifies for a modification in his sentence due to certain age, health, or

family circumstance factors, often referred to as compassionate release."  *Id.*  With

the passage of the First Step Act, Congress amended 18 U.S.C. § 3582(c)(1)(A)

"to provide that a defendant may request compassionate release from the

sentencing court after exhausting his administrative remedies." *Id.*

Compassionate release may be available to a defendant where "extraordinary and compelling reasons" warrant a reduction in the sentence previously imposed. 18 U.S.C. § 3582(c)(1)(A)(i). The reduction "must be consistent with applicable policy statements issued by the United States Sentencing Commission." *United States v. Norris*, 2020 WL 2110640, at *1. U.S.S.G. § 1B1.13 provides that, in addition to finding extraordinary and compelling reasons, a court must consider the 18 U.S.C. § 3553(a) factors, and determine whether the defendant is a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13. The commentary to § 1B1.13 sets forth criteria for determining when extraordinary and compelling reasons exist, including the defendant's medical condition, age, family circumstances, and other reasons. *See id.* application note 1. This Court has recognized that "judges have discretion to afford relief to defendants under § 3582(c)(1)(A) even where their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. § 1B1.13." *United States v. Norris*, 2020 WL 2110640, at *2.

When granting compassionate release, the Court may reduce or modify the term of imprisonment, and "may impose a term of probation or supervised release

4

with or without conditions that does not exceed the unserved portion of the

original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A).

## ARGUMENT

MODIFICATION OF MR. ALLEN'S SENTENCE IS WARRANTED UNDER 18 U.S.C. § 3582(c)(1)(A).

> A. The Administrative Exhaustion Requirement Is Satisfied Because Mr. Allen Has No Available Administrative Remedies.

A defendant residing in the federal Bureau of Prisons may file a motion for

compassionate release in federal court "after the defendant has fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf or the lapse of 30 days from the receipt of such a request

by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.

§ 3582(c)(1)(A). Mr. Allen is not yet in the custody of the Bureau of Prisons.

(*See* DE 45). Mr. Allen is able to meet this administrative exhaustion requirement

because there are no administrative remedies available to him through the Bureau

of Prisons.

This Court's decision in *Norris* establishes that, when a defendant is not yet

in the custody of the Bureau of Prisons, the administrative exhaustion requirement

may be satisfied without the submission of any request to the Bureau of Prisons.

In *Norris*, the defendant had been sentenced to serve a prison term, but had not

been transferred into the custody of the Bureau of Prisons when he moved for compassionate release. 2020 WL 2110640, at *2. This Court concluded that the defendant met the administrative exhaustion requirement without making a request to the Bureau of Prisons, because there was no Bureau of Prisons warden to whom the defendant could direct a compassionate release request. *See id.*

*Norris* applies here, where Mr. Allen has been sentenced to a prison term but is not yet in the custody of the Bureau of Prisons. (*See* DE 43 at 2; DE 45). Like the defendant in *Norris*, Mr. Allen has no administrative remedies, and there is no warden to whom Mr. Allen could direct a compassionate release request. *See United States v. Norris*, 2020 WL 2110640, at *2. Therefore, the administrative exhaustion requirement may be deemed satisfied. *See id.*

In any event, the exhaustion requirement is non-jurisdictional, and the Court can waive this requirement. *See* Order at 3, n.4, *United States v. Myles*, No. 5:15-cr-00172-BO-10 (E.D.N.C. June 18, 2020) (DE 47-1) (recognizing that exhaustion requirement in § 3582(c)(1)(A) is non-jurisdictional). The Court may waive the exhaustion requirement if "(1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice." Order at 4, *United States v. Johnson*, No. 4:18-CR-64-BO-1

(E.D.N.C. June 10, 2020) (DE 47-2). Courts have recognized that the COVID-19 pandemic implicates each of these circumstances. *See id.* In this case, Mr. Allen respectfully contends that it is appropriate for the Court to waive the exhaustion requirement and reach the merits of Mr. Allen's motion. *See id.* (waiving exhaustion requirement in light of COVID-19).

> ### B. Extraordinary and Compelling Reasons Justify Modifying Mr. Allen's Prison Sentence.
>
> #### 1. The court is well suited to evaluate the existence of extraordinary and compelling reasons.

Congress did not define "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c). Prior to the expansion of compassionate release under the First Step Act, the Sentencing Commission issued a policy statement and associated commentary defining "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.3 application note 1. The Bureau of Prisons issued a program statement, revised after the passage of the First Step Act, to guide its wardens' analysis of the presence of extraordinary and compelling reasons for compassionate release. *See* Bureau of Prisons, *Compassionate Release/Reduction in Sentence*, Program Statement 5050.50 (2019) (DE 46-7).

The Sentencing Commission has recognized that extraordinary and compelling reasons exist when the caregiver of the defendant's minor child or

children is incapacitated.  U.S.S.G. § 1B.13 application note 1(C)(i).  The

Sentencing Commission also recognized that there may be an extraordinary and

compelling reason for release not identified in the commentary, but determined by

the Director of the Bureau of Prisons.  *Id.* application note 1(D).  Although the

Sentencing Commission's position may be considered, it does not constrain the

Court's ability to grant relief in circumstances that do not fit squarely within

§ 1B1.13.  *See United States v. Norris*, 2020 WL 2110640, at *2.  In evaluating

whether there is an extraordinary and compelling reason not identified in the

commentary, courts are also not limited to the factors identified by the Bureau of

Prisons; rather, courts exercise similar discretion to that previously reserved to the

Director of the Bureau of Prisons in determining whether extraordinary and

compelling reasons exist.  *See United States v. Beck*, 425 F. Supp. 3d 573, 583

(M.D.N.C. 2019).

In opposition to other compassionate release motions, the Government has

repeatedly argued that this Court is "not well positioned" to determine whether

compassionate release is appropriate.[1]  This argument is unfounded and contrary

---

[1] For example, the Government made this argument in *United States v. Barnes*, No. 5:18-CR-347-BO-1 (Dkt. No. 126); *United States v. James*, No. 2:16-CR-8-BO-1 (Dkt. No. 72); *United States v. Myles*, No. 5:15-CR-172-BO-10 (Dkt. No. 1212); *United States v. Johnson*, No. 4:18-CR-64-BO-1 (Dkt. No. 93); and *United States v. Norris*, No. 7:19-CR-36-BO-2 (Dkt. No. 91).

to the purpose of the First Step Act.  Even before the First Step Act expanded

compassionate release, the Sentencing Commission recognized that courts are "in

a unique position to determine whether such circumstances [justifying

compassionate release] are present." *United States v. Beck*, 425 F. Supp. 3d at 583

(citing Sentencing Commission).  The First Step Act established that "Congress

wants courts to take a *de novo* look at compassionate release motions." *Id.* at 587.

Section 3582(c)(1)(A), as amended by the First Step Act, "vests courts with

independent discretion to determine whether there are 'extraordinary and

compelling reasons' to reduce a sentence." *United States v. Bryant*, No. CR

95-202-CCB-3, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020).  Contrary to the

Government's argument in other cases, the Court is fully capable of making that

determination.

   2.  Extraordinary and compelling reasons are present in
      Mr. Allen's case.

  Extraordinary and compelling reasons warrant modification of Mr. Allen's

sentence to probation with a condition of home detention, given the widespread

threat of COVID-19 in the Bureau of Prisons, Mr. Allen's individual

characteristics, and his family circumstances.

  COVID-19 has infected thousands of inmates in numerous facilities

throughout the Bureau of Prisons system.  *See* Bureau of Prisons, COVID-19

Update Website (DE 46-8); Dagger Decl. ¶ 11.  Incarcerated persons are

particularly vulnerable to infection because their living conditions make social

distancing impossible or at least impracticable.  *See, e.g.*, Matthew J. Akiyama,

M.D., et al., *Flattening the Curve for Incarcerated Populations — Covid-19 in

Jails and Prisons*, 382 New England Journal of Medicine 2075 (2020)

(recognizing that social distancing is "extremely challenging" in correctional

facilities) (DE 46-9).

Although younger, healthy individuals appear to develop severe illness from

COVID-19 less often than older persons with underlying health conditions, many

young people, and people without underlying health conditions, have suffered

from severe illness.  *See Coronavirus and COVID-19:  Younger Adults Are at

Risk, Too*, Johns Hopkins Medicine Website (DE 46-10); Centers for Disease

Control and Prevention, 69 Morbidity and Mortality Weekly Report 923, 924 (July

17, 2020) (DE 46-11 at 3) (finding that more than 23% of subjects who died from

COVID-19 did not have underlying medical conditions).  And even asymptomatic

individuals can suffer long-term lung damage from the virus.  *See* Heshui Shi, et

al., *Radiological findings from 81 patients with COVID-19 pneumonia in Wuhan,

China:  a descriptive study*, 20 Lancet Infectious Disease 425, 433 (April 2020)

(DE 46-12) (reporting abnormal lung CT scan findings in asymptomatic COVID-19 patients); Heng Meng, et al., *CT imaging and clinical course of asymptomatic cases with COVID-19 pneumonia at admission in Wuhan, China*, 81 Journal of Infection e33, e38 (2020) (DE 46-13) (same); Quan-Xin Long, et al., *Clinical and immunological assessment of asymptomatic SARS-CoV-2 infections*, Nature Medicine (2020) (DE 46-14) (same); Daniel P. Oran, et al., *Prevalence of Asymptomatic SARS-CoV-2 Infection: A Narrative Review*, 2020 Annals of Internal Medicine 1, 4 (2020) (DE 46-15) (discussing findings of lung abnormalities in high proportion of one asymptomatic COVID-19 patient group, and possibility that COVID-19 causes lung deficits even in asymptomatic patients). Further, younger, healthy individuals with mild or no symptoms are capable of transmitting the virus to others, especially in the crowded living conditions of the Bureau of Prisons. *See* World Health Organization, *Q&A: How is COVID-19 transmitted?* (DE 46-16) ("[I]nfected people can transmit the virus both when they have symptoms and when they don't have symptoms.").

Mr. Allen's history and his record of compliance on pretrial and presentencing release demonstrate that he can be trusted to serve a sentence in home detention, without adding to the burden of the Bureau of Prisons. (*See* DE 38 ¶ 10). Mr. Allen has no prior arrests or criminal convictions (*id.* ¶¶ 24-30), an

11

exemplary record of military service (*id.* ¶ 38), and the support of his former colleagues and his family, *see* Sarah Allen Decl. ¶¶ 5-8; Letter from Robert Ciaccio (DE 46-4); Dagger Decl. ¶ 6. Requiring Mr. Allen to serve his sentence in a Bureau of Prisons facility will expose Mr. Allen to the risk of contracting COVID-19, add yet another inmate to a crowded prison system where the virus has spread widely, and further burden the Bureau of Prisons—which is already dealing with the strain of the pandemic. *See* Bureau of Prisons, COVID-19 Update Website (DE 46-8); Dagger Decl. ¶ 11.

Mr. Allen's family circumstances also support a finding that there is an extraordinary and compelling reason to modify his sentence. *See* U.S.S.G. § 1B.13 application note 1(C)(i) (recognizing incapacitation of primary caregiver of defendant's children as extraordinary and compelling reason). Ms. Allen is returning to work in a school system strained by the new challenges of the pandemic. *See* Sarah Allen Decl. ¶ 5; *see also* Centers for Disease Control and Prevention, *Operating Schools During COVID-19* (DE 46-17) (discussing precautions necessary to operate schools). Because of the pandemic, Ms. Allen expects to have to work on weekends, and to be unable to take time off from work unless time off is necessary because of COVID-19. Sarah Allen Decl. ¶ 5. COVID-19 has also increased the difficulty of finding appropriate childcare

outside the home—a challenge so significant that Congress enacted paid leave requirements for many workers who cannot work due to lack of childcare. *See* Emergency Family and Medical Leave Expansion Act, Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020). If Mr. Allen's sentence is modified to probation with home detention as a condition, he will be able to serve as the primary caregiver for the Allens' three children. *See* Sarah Allen Decl. ¶ 5. Although Mr. Allen's family circumstances do not correspond directly to the family circumstances the Sentencing Commission has recognized as extraordinary and compelling reasons for compassionate release, U.S.S.G. § 1B.13 application note 1(C), the Court may, in its discretion, take into account that Sarah Allen is dealing with even more significant burdens than a single parent often faces, given the in-person contact required for her job and the obstacles to securing childcare during the pandemic. *See United States v. Norris*, 2020 WL 2110640, at *2 (recognizing judicial discretion "to afford relief to defendants under § 3582(c)(1)(A) even where their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. § 1B1.13").

Taken together, these circumstances warrant a modification of Mr. Allen's sentence, to avoid the risk of Mr. Allen contracting or further transmitting COVID-19, and to provide for the care of the Allens' three minor children. Mr.

Allen respectfully contends that extraordinary and compelling reasons warrant the modification of his sentence.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).

> C.     A Modified Sentence Would Serve the Sentencing Objectives of 18 U.S.C. § 3553(a).

In ruling on a motion for compassionate release, the Court will also consider whether a modified sentence is consistent with § 3553(a).  *See* U.S.S.G. § 1B1.13. Section 3553(a) requires the Court to fashion a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing, taking into account:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  the need for the sentence imposed--
> > (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B)  to afford adequate deterrence to criminal conduct;
> > (C)  to protect the public from further crimes of the defendant; and
> > (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1), (2).  The Court will also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  *Id.* § 3553(a)(6).  A modified sentence for Mr. Allen would still be sufficient, but not greater than necessary, to serve these objectives.

A modified sentence would adequately reflect the nature and circumstances of the offense. *See id.* § 3553(a)(1). Mr. Allen regrets his actions and does not intend to minimize the seriousness of his conduct. While serious, Mr. Allen's actions did not involve violence. (*See* DE 38 ¶¶ 11-20). Mr. Allen admitted at sentencing that his motivation was financial.

Mr. Allen's personal history and characteristics weigh in favor of a modified sentence. *See* 18 U.S.C. § 3553(a)(1). Prior to the instant offense, Mr. Allen had never been charged with or convicted of a crime of any kind. (DE 38 ¶¶ 24-30). His character letters and prior record demonstrate that his conduct giving rise to the charges in this case was aberrational. *See* Letter from Robert Ciaccio (DE 46-4). Mr. Allen has served the United States since enlisting in the Army in 2003, including eleven deployments. (*See* DE 38 ¶ 38). He is a highly trained Army Ranger who saw combat and performed admirably. (*See id.* ¶ 37). In the course of his service, Mr. Allen earned the Meritorious Service Medal and twice earned the Bronze Star Medal. (*Id.* ¶ 38). Mr. Allen understands, as he indicated at his sentencing hearing, that his conduct was unacceptable, and that he is responsible for destroying his successful military career and burdening his family with the consequences of his conduct. Mr. Allen has accepted full responsibility for his conduct and made no excuses for it. (*See id.* ¶ 20).

Even if modified, the sentence imposed on Mr. Allen would reflect the seriousness of his crimes, promote respect for the law, provide just punishment, and provide adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(A), (B). Mr. Allen has never served a criminal sentence of any kind. (DE 38 ¶¶ 24-30). Therefore, serving a sentence of probation with a condition of home detention will have an impact on Mr. Allen that a similar sentence could not be expected to have on a defendant who has served other sentences in the past. *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (noting fact that "prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned" as relevant to § 3553(a) factors). Mr. Allen also has suffered other consequences of his conduct—consequences that he acknowledges and accepts as warranted for his behavior—including the loss of his decorated military career. *See* Dagger Decl. ¶ 4. In light of Mr. Allen's history and the fallout from his actions, a sentence of probation with a condition of home detention will adequately punish and deter him.

A probationary sentence also will protect the public from future crimes by Mr. Allen. *See* 18 U.S.C. § 3553(a)(2)(C). If the Court grants Mr. Allen's motion, he will live at home with his wife and children. Sarah Allen Decl. ¶ 5. His wife is committed to supervising his compliance with all conditions, and Mr. Allen has

shown while on pretrial and presentencing release that he is committed to complying with all conditions. *Id.* ¶ 7; DE 38 ¶ 10. Mr. Allen will not engage in further criminal conduct. Mr. Allen is fortunate to have opportunities to work, both inside and outside of the home. *See* Dagger Decl. ¶¶ 6-9. The fact that Mr. Allen will be employed, if working is consistent with the conditions of his release, also will reduce the likelihood of recidivism, making a modified sentence sufficient. *See Kelley B. McNichols, Reentry Initiatives: A Study of the Federal Workforce Development Program*, 76 Fed. Probation 37, 42 (Dec. 2012) (DE 46-18 at 7) (concluding that "employment is a predictor of successful reentry"); *see also United States v. Newman*, 350 F. Supp. 3d 1218, 1222 (M.D. Ala. 2018) ("Maintenance of employment is key to preventing recidivism."); *United States v. Bannister*, 786 F. Supp. 2d 617, 661 (E.D.N.Y. 2011) ("Employment is a crucial antidote for recidivism."). If he is able to work, Mr. Allen will also begin making restitution payments. *See* Letter from Bryan Allen (DE 46-3).

A modified sentence would allow Mr. Allen to receive medical care in the most effective manner, outside the crowded prison system that is further burdened by thousands of inmates testing positive for COVID-19. *See* 18 U.S.C. § 3553(a)(2)(D); Bureau of Prisons, COVID-19 Update Website (DE 46-8); Dagger Decl. ¶ 11. Although Mr. Allen does not have one of the underlying

medical conditions recognized by the Centers for Disease Control and Prevention as increasing the risk of severe illness from COVID-19, he has a need for follow-up medical care to address injuries that occurred during his military service. (*See* DE 38 ¶ 34).

Finally, modifying Mr. Allen's prison sentence would not create unwarranted sentence disparities, and in fact would avoid such disparities. *See* 18 U.S.C. § 3553(a)(6). In four related cases, the defendants each received probationary sentences: (1) five years' probation with a condition of home detention for nine months; (2) four years' probation with a condition of home detention for six months; (3) five years' probation with a condition of home detention (requiring the defendant to abide by a curfew) for nine months; and (4) four years' probation without home detention. *See* DE 38 ¶¶ 6-9; Judgment, *United States v. Browning*, No. 5:18-CR-00036-BO-1 (E.D.N.C. Aug. 9, 2019) (DE 47-3); Judgment, *United States v. Cortijo*, No. 5:19-CR-00312-BO-1 (E.D.N.C. Dec. 12, 2019) (DE 47-4); Judgment, *United States v. Ortiz-Rivera*, No. 5:19-CR-00393-BO-1 (E.D.N.C. Jan. 30, 2020) (DE 47-5); Order, *United States v. Ortiz-Rivera*, No. 5:19-CR-00393-BO-1 (E.D.N.C. Feb. 13, 2020) (DE 47-6); Judgment, *United States v. Nucci*, No. 5:19-CR-00392-BO-1 (E.D.N.C. June 25, 2020) (DE 47-7). Unlike Mr. Allen, none of those four defendants were convicted

of crimes carrying a mandatory minimum sentence. (*See* DE 38 ¶¶ 6-9).

Therefore, Mr. Allen necessarily received a more severe sentence than was imposed in any of the related cases, despite that fact that in one of the related cases, the defendant was ordered to pay more than $1.85 million in restitution (compared to $250,000 in Mr. Allen's case). (*See* DE 43 at 6; DE 47-3 at 5). If Mr. Allen's motion is granted, his sentence will still be more severe than the sentences imposed in the four related cases—if the Court imposes a term of probation or supervised release equivalent to the unserved prison sentence, and with a condition of home detention, Mr. Allen will serve two years and one month in home detention, more than double the longest term of home detention imposed in any related case. *See supra* p. 18. Mr. Allen's total sentence (two years and one month on probation or supervised release with home detention, plus the three-year term of supervised release imposed at sentencing) will still exceed the total sentence imposed in any of the related cases. *See supra* p. 18; *see also generally United States v. Dorsey*, No. CR16-0138-BLW-JCC, 2020 WL 2562878, at *4 (W.D. Wash. May 19, 2020) (granting compassionate release and imposing additional term of supervised release equivalent to remaining prison term, with condition of home detention, to be followed by term of supervised release previously imposed at sentencing).

D.    Mr. Allen Is Not a Danger to the Safety of Any Other Person or to the Community.

Finally, Mr. Allen would not present a danger to any person or the community if granted compassionate release.  *See* U.S.S.G. § 1B1.13(2).

Mr. Allen is a beloved parent, spouse, and friend.  Sarah Allen Decl. ¶ 8; Letter from Robert Ciaccio (DE 46-4).  He has no criminal record.  (DE 38 ¶¶ 24-30).  He has no history of violence of any kind.  Sarah Allen Decl. ¶ 8.  He has complied with all conditions while on release in connection with this case.  (*See* DE 38 ¶ 10).  If consistent with his release conditions, Mr. Allen will be employed.  *See supra* pp. 16-17.  Otherwise, he will be at home with his family, and his wife will provide financial support.  *See* Sarah Allen Decl. ¶ 6.  In either case, he will pose no danger to others or the community.

## **CONCLUSION**

For the reasons stated above, Defendant Bryan Craig Allen respectfully requests that the Court grant his motion for compassionate release, modify his sentence, and impose a term of probation or supervised release of two years and one month, with a condition of home detention and any additional conditions the Court may impose, to be followed by the three-year term of supervised release previously imposed.

This the 13th day of August, 2020.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Paul K. Sun, Jr.
N.C. State Bar No. 16847
Kelly Margolis Dagger
N.C. State Bar No. 44329
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant Bryan Craig Allen*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the clerk of court using the CM/ECF system, which will send notice of such filing to all CM/ECF users who have made an appearance in this case.

This the 13th day of August, 2020.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger

*Defendant Bryan Craig Allen*